COYKENDALL v. HARRISON et al., Board of Water Com'rs.

(Supreme Court, Appellate Division, Third Department. March 26, 1912.)

1. MUNICIPAL CORPORATIONS (§ 247*)—WATER SUPPLY — FILTRATION — BAD FAITH.

Bad faith of the board of water commissioners of a city in contracting for additional water filters for the city's supply could not be predicated upon the fact that the board did not adopt a more efficacious plan than that of additional filtration.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 651–656, 682; Dec. Dig. § 247.*]

2. MUNICIPAL CORPORATIONS (§ 993*)—MUNICIPAL WATER SUPPLY—PUBLIC FUNDS—USE—TAXPAYER'S ACTION.

Where a board of water commissioners of a city had no right to install additional water filters, or to enter into a contract therefor, without the consent of the city council, and the funds the board expected to use to pay for the filters belonged to the city, a taxpayer was entitled

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

as a matter of law to an injunction restraining the commissioner from carrying out the contract and attempting to bind the city thereby.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2158–2161; Dec. Dig. § 993.*]

3. MUNICIPAL CORPORATIONS (§ 230*)—MUNICIPAL WATER SUPPLY—FILTERS— PURCHASE—"MAINTENANCE."

The Kingston city charter (Laws 1896, c. 747) created a board of water commissioners, with power, with the consent of the common council, to construct and maintain a waterworks system. Section 98 provided that the moneys derived therefrom should be applied to the payment of the cost of maintaining, operating, and extending the waterworks, and to the payment of principal and interest on bonds as they fall due. The board, by section 99, was given power to keep the system in operation independent of the city council, and to fix and collect water rates, and make and enforce rules and regulations. By section 101 the moneys derived from water rates and penalties were required to be paid to the city treasurer, to be credited to the water fund and applied to the payment of expenses of ordinary maintenance and management, the balance, if any, to the payment of principal and interest on bonds, and any surplus still remaining to be used for any lawful city purpose. Held, that additional filters, requiring an expenditure of $16,235, was not an ordinary "maintenance" expense, and that the board had no power to incur such expense without the consent of the city council.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 654–656; Dec. Dig. § 230.*

For other definitions, see Words and Phrases, vol. 5, pp. 4281–4286; vol. 8, p. 7712.]

Appeal from Special Term, Ulster County.

Action by Samuel D. Coykendall against William R. Harrison and others, constituting the Board of Water Commissioners of Kingston. From an order refusing to dissolve a temporary injunction restraining defendants from carrying out a contract for the purchase of additional filters for the Kingston water system, defendants appeal. Affirmed.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Arthur C. Connelly (G. D. B. Hasbrouck, of counsel), for appellants.

A. T. Clearwater, for respondent Coykendall.

James Jenkins, for respondent City of Kingston.

HOUGHTON, J.   The plaintiff, as a taxpayer of the city of Kingston, brings this action to restrain the board of water commissioners of that city from carrying out a contract which it entered into with the New York Continental Jewel Filtration Company, whereby it agreed to pay such company $16,235 for furnishing and installing additional filters and purifying appliances in connection with the waterworks of that city. No corrupt motives or actual corruption is charged against the board of water commissioners. The complaint does allege in general terms, however, that the contract was entered into on the part of the board in bad faith, because there are certain other ways and means of remedying the concededly bad condition of the water supply of the city much more efficacious than the installing

of additional filters. Filtration is a conceded necessity on account of the muddy character of the water supply, and filters of the kind which the board contracted for have been in use for many years, and the installing of additional filters is claimed and would seem to be proper because of the increased consumption of water, and for the purpose of avoiding the undue forcing of water in process of filtration.

[1] Bad faith cannot be predicated upon the fact that the board of water commissioners did not adopt a more efficacious plan than that of additional filtration. The allegations of bad faith are mere conclusions, and are not supported by the facts, and we would have no hesitancy in dissolving the injunction, except for the fact that, as we construe the charter of the city of Kingston, the expenditure of $16,000 for additional filters is not an expenditure for ordinary maintenance of the waterworks system, which the board of water commissioners has the power to make without the consent of the common council of the city.

Prior to 1895 the city of Kingston was supplied with water by a private company, but by chapter 803 of the Laws of that year a board of water commissioners was created, with a view to the establishing of a water system under municipal ownership. This law, with certain modifications, was incorporated in chapter 747 of the Laws of 1896, being title 9 of the charter of the city of Kingston, and it is this latter law which prescribes the duties and limits the powers of such board.

Section 96 of that law declares that the board, with the assent of the common council, may construct and maintain a waterworks system for the purpose of supplying the city with wholesome water, and that they may exercise such powers as are necessary and proper to accomplish such purpose, "and shall proceed in the manner hereinafter prescribed."

Section 97 relates to the plan or system of water supply to be adopted, and the board is commanded to investigate various plans and systems, and report the same, with its conclusion, to the common council of the city, and that with the assent of such common council it may select and determine upon any plan so reported. To carry into effect such plan, it is provided by section 98 that bonds of the city, signed by the mayor and its treasurer, may be issued to prescribed amount, and that such bonds shall be so classified that $24,000 of the principal shall become payable in 16 years from the date of issue, and $24,000 in each year thereafter. The section concludes as follows:

"The moneys derived from all sources herein provided for shall be applied to the payment of the cost of maintaining, operating and extending the waterworks and to the payment of the principal and interest of bonds falling due."

After the adoption of the system, and the acquiring of necessary lands and easements therefor, and the construction of the same by the board according to the plan, the commissioners are empowered by section 99 to maintain and keep the same in operation, and the board is given power to select, determine, and use the streets, roads, and highways through which the distributing pipe shall be laid, and

extend such pipe from time to time as it may determine without the assent of the common council, and also without such assent to fix and collect ·water rates and make and enforce rules and regulations. Section 101 reads as follows:

"The moneys derived from water rates and penalties shall be paid to the city treasurer and shall be credited to the water fund account and shall be applied to the payment of the expenses of the ordinary maintenance and management of said waterworks, and if more than sufficient for that purpose the balance thereof shall be applied to the payment of the principal and interest of the bonds herein provided for and for the purposes mentioned in section 97 of this act and no other purpose. When said receipts shall be more than sufficient for such purposes the overplus may be used for any lawful municipal purpose."

Section 97 of the act is the section relating to the plan or system of the waterworks, concerning which the board has no power to act except upon the assent of the common council of the city. The board is commanded to keep books of account respecting the water system, showing cost of construction and maintenance, and of extending the same, and of all collections, receipts, and expenditures, and report the same to the mayor of the city upon the 1st day of November; and section 102, which so commands, concludes as follows:

"It shall also make and deliver to the mayor at the same time an estimate of the amount necessary to pay principal and interest or other charges for the ensuing year, which estimate shall be presented by the mayor to the common council and the amount thereof raised, levied and collected as other city charges and paid over and credited to the water fund account."

On the 1st day of November, 1911, the board reported to the mayor that during the fiscal year it had received from water rates a sufficient sum to pay operating expenses and to provide for the redemption of the $24,000 of bonds, and that the board was not in need of any amount of money to be levied by taxation for the payment of interest, principal or any other charge for the ensuing year. The report contained the further statement that the filter house would need to be enlarged by the installing of some additional mechanical filters similar to those in use to meet the increased consumption of water. As a matter of fact there was already on hand in the water fund account under the control of the board of water commissioners, or there would be received from the ordinary revenues of the same, sufficient money to pay the $16,235 contracted to be paid to the filtration company.

The common council was not asked to, and did not, approve of the installing of new filters suggested by the report, or of the contract which the board had entered into with the filtration company. Clearly the board of water commissioners of the city of Kingston has the right to expend without the assent of the common council all necessary amounts of money for ·the ordinary maintenance of the system. Whether or not the installation of additional filters at a cost of $16,000 can be termed an ordinary maintenance of the waterworks is the only question involved.

[2] If the defendant board had no right to install the additional filters, or to enter into the contract with the filtration company there-

for, without the assent of the common council, then as matter of law the plaintiff, being a taxpayer, has the right to an injunction, and to a judgment restraining it from carrying out such contract and attempting to bind the city thereby. The moneys which are proposed to be expended are moneys of the city, and an action lies to prevent their illegal use, as well as it would lie if the moneys were proposed to be raised by taxation. The provisions of the charter are not at all clear, but our view is that the installation of the additional filters at a cost of upwards of $16,000 cannot be termed an ordinary maintenance of the waterworks system, and that it was necessary for the defendant to obtain the assent of the common council therefor, in order to give it power to enter into the contract with the filtration company.

[3] The waterworks system belongs to the city. The common council is the governing and controlling body thereof. The board of water commissioners is a subsidiary body, having only such powers as the law creating it prescribes. It is given power to do some things without the assent of the common council, and in spite of the disapproval of the common council. It can provide for and pay the ordinary running expenses, and without dictation or interference it can lay mains in whatever street and to whatever extent it sees fit. It can also institute necessary condemnation proceedings, or if it desires it can certify to the common council the necessity therefor and permit such body to carry on such proceedings. The fact that it is given in some respects untrammeled power indicates that in other matters the general scheme of submission for approval to the common council should be carried out.

The moneys which the board proposes to pay out in fulfilling the contract which it has entered into for the installing of additional filters were derived from water rates. Section 101 of the charter requires these water rates to be paid into the city treasury. That section provides that they shall be applied—

"to the payment of the expenses of ordinary maintenance and management of said waterworks, and if more than sufficient for that purpose the balance thereof shall be applied to the payment of the principal and interest on the bonds herein provided for and for the purposes mentioned in section 97 of this act *and no other purpose.*"

Section 97, as has been pointed out, deals only with the plan and system of the water supply, and requires the approval of the common council. The board of water commissioners cannot proceed at all in that regard without such approval and assent. When water rates are collected and paid into the city treasury, any surplus remaining after paying the expenses of ordinary maintenance and management, and principal and interest on the bonds, can be used for no other purpose than that specified in section 97, unless, of course it is required for no such purpose at all, when, it being city money, can be used for any municipal purpose.

If the board of water commissioners had no right to enter into the contract for the expenditure of so large a sum for the installation of additional filters without the assent of the common council, notwith-

standing the fact that they were mere additions to an existing plant, the injunction cannot be dissolved, and the learned Special Term was entirely correct in refusing so to do. If the board of water commissioners had the right to make such contract without the assent of the common council, there is nothing in the papers to warrant an injunction.

Our conclusion is that they did not have such right, and that as matter of law, and not as matter of discretion, the plaintiff is entitled to the injunction granted. By this holding the parties can speedily obtain a construction of the charter from the Court of Appeals, which will dispose of the controversy in favor of one party or the other.

The order should be affirmed, with $10 costs and disbursements, and the injunction continued as matter of law, and not as matter of discretion. All concur.